UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ROBIN BROWN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:16 CV 1452 ACL |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM**

Plaintiff Robin Brown brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Brown's severe back impairment, she was not disabled as she had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

## I. Procedural History

Brown filed an application for DIB on January 13, 2014, claiming that she became unable to work due to her disabling condition on September 21, 2012, due to degenerative disc disease. (Tr. 230-31.) Brown's claim was denied initially. (Tr. 83.) Following an administrative hearing, Brown's claim was denied in a written opinion by an ALJ, dated June 26, 2015. (Tr. 11-20.) Brown then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on July 18, 2016. (Tr. 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Brown argues that the ALJ erred "when determining Brown's RFC in that she erroneously discounted the well-supported opinion of Brown's treating physician, failed to otherwise support the RFC with substantial evidence, and did not properly consider Brown's subjective reports." (Doc. 12 at 7.)

## II. The ALJ's Determination

The ALJ found that Brown meets the insured status requirements of the Social Security Act through December 31, 2017, and has not engaged in substantial gainful activity since September 21, 2012, the alleged onset date. (Tr. 13.)

In addition, the ALJ concluded that Brown had the following severe impairments: degenerative disc disease. *Id.* The ALJ further found that Brown's medically determinable impairment of major depressive order was not severe. (Tr. 15.) The ALJ concluded that Brown did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.*

As to Brown's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), meaning that the claimant is capable of lifting or carrying 20 pounds occasionally, lifting or carrying 10 pounds frequently, sitting for 6 hours in an 8-hour workday, and standing or walking for 6 hours in an 8-hour workday. The claimant is capable of twisting, climbing, balancing, stooping, crawling, crouching and kneeling for up to 1/3 of the day.

(Tr. 15.)

The ALJ found that Brown's allegations regarding her limitations were not entirely credible. (Tr. 16.) In determining Brown's RFC, the ALJ indicated that she was assigning "no weight" to the opinion of treating physician Jeffrey Faron, M.D., regarding Brown's limitations. (Tr. 17.)

The ALJ further found that Brown was capable of performing past relevant work as a security guard and assistant collections supervisor. (Tr. 18.) The ALJ made the alternative finding that there were other jobs existing in the national economy that Brown was capable of performing, such as small parts assembler, unskilled cashier, and laundry worker. (Tr. 18-19.) The ALJ therefore concluded that Brown has not been under a disability, as defined in the Social Security Act, from September 21, 2012, through the date of the decision. (Tr. 20.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on January 12, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley*

*v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §

416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does

not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

As previously noted, Brown argues that the ALJ erred in determining her RFC. Brown also contends that, in determining her RFC, the ALJ erroneously discounted the opinion of treating physician Dr. Faron, and did not properly consider her subjective complaints. The undersigned will discuss these claims in turn, beginning with the ALJ's credibility analysis.

### 1. Credibility Analysis

Brown argues that the ALJ's analysis of her credibility is not supported by substantial evidence because the ALJ relied on a mistaken evaluation of Brown's medical treatment and basic daily activities to find that she was not credible.

As a general matter, credibility determinations "are the province of the ALJ, and as long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility," the Court will defer to her decision. *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). Furthermore, an ALJ "may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin*, 826 F.3d at 1086 (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006)). In evaluating Plaintiff's credibility regarding the extent of her symptoms, the ALJ must consider all of the evidence, including objective medical evidence, and evidence relating to the factors enumerated in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), including: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of Plaintiff's pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) Plaintiff's functional restrictions. *See Julin*, 826 F.3d at 1086; *see also* 20 C.F.R. §

416.929(c). The ALJ does not need to discuss each factor separately; rather, the court will review the record as a whole to ensure relevant evidence was not disregarded by the ALJ. *See McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011); *see also Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001) ("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth.").

Here, the ALJ properly discounted Brown's credibility based upon Brown's testimony, the objective medical evidence of record, and Brown's daily activities.

The ALJ first discussed Brown's daily activities. (Tr. 16.) The ALJ recounted information provided by Brown in her Function Report, including that Brown reported she is able to: prepare meals, wash dishes, sweep, mop the floors, and do laundry; drive a car; drive a motorcycle; shop for groceries and household items once a week; manage her finances; enjoy crafting; attend barbeques and bike events; spend time on Facebook; go to friends' houses to visit; and lift thirty pounds on a good day, walk one to two blocks, and stand for thirty minutes. (Tr. 16, 219-26.) The ALJ also recognized Brown's testimony that she leans on the cart when grocery shopping, and that she has bad days on which she experiences debilitating pain and sits in a recliner most of the day. (Tr. 16, 43, 46.) The ALJ concluded that Brown's allegations were inconsistent with the evidence of record. She stated that Brown "remains capable of driving a vehicle and a motorcycle…attends bike rallies and completes her daily activities, despite her alleged pain." (Tr. 16.)

Brown argues that the ALJ erred in her assessment of the degree to which Brown is restricted in her daily activities. Brown is correct that "a claimant need not prove she is completely bedridden or completely helpless to be found disabled." *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005). Although Eighth Circuit cases sometimes send "mixed signals"

concerning the relevance of a claimant's daily activities in credibility determinations, the daily activities admitted by Brown are in excess of other cases where the daily activities have undercut a plaintiff's credibility as to disabling pain. *See Clevenger v. Social Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009) (acknowledging that the Eighth Circuit has sent "mixed signals" concerning the importance of daily activities, but agreeing that the daily activities in that case—doing laundry, washing dishes, changing sheets, ironing, preparing meals, driving, attending church, and visiting friends and relatives—supported an ALJ's decision to discredit a plaintiff's assertions of disabling pain). The daily activities in this case exceed those in *Clevenger*. *See also Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015) (permitting an ALJ to discount a fibromyalgia plaintiff's credibility in part based upon the claimant's daily activities, including the ability to cook, clean, drive, shop, and take care of personal grooming and hygiene); *Pirtle v. Astrue*, 479 F.3d 931, 935 (8th Cir. 2007) (same, daily activities of driving a manual-transmission car, shopping, performing housework, fishing, attending church two to three times a week, caring for personal needs, and home-schooling children).

Brown argues that the ALJ placed too much weight on her ability to ride a motorcycle. She points to her hearing testimony that she only rides short distances on the motorcycle, and is unable to ride long distances as she did in the past. (Tr. 43.) Brown further argues that she has bad days, on which she remained in the recliner. The ALJ properly considered Brown's testimony regarding her ability to ride a motorcycle in determining her credibility. The ALJ acknowledged Brown's hearing testimony that she experienced bad days on which her pain required her to remain in her recliner. She discussed the inconsistency between this testimony and Brown's testimony that she remained capable of riding a motorcycle. When Brown testified that she only rides short distances, the ALJ remarked as follows: "[a]nd you can do that with the

severe kind of back problems that you're talking about?...I don't see where—if you're as bad off as you say, and you can't leave a recliner, I don't know how you can drive a motorcycle. Come on." (Tr. 56.) The ALJ did not err in finding that Brown's ability to ride a motorcycle even a short distance is inconsistent with her complaints of disabling back pain. Substantial evidence supports the ALJ's finding that Brown's daily activities are inconsistent with her allegations of disabling pain.

The ALJ next found that the objective medical evidence does not support Brown's subjective complaints. (Tr. 16-17.) She stated that the objective imaging shows mild degenerative changes in Brown's lumbar spine, with no significant worsening over a two-year period. *Id.* The ALJ cited the report from a lumbar MRI Brown underwent on September 12, 2014, that found "mild degenerative disc disease with changes at L4-L5 and to a lesser extent at L5-S1 without significant worsening." (Tr. 368.)

The ALJ stated that there is no evidence of radicular or neurological symptoms and her physicians do not recommend surgery because there is no radiographic evidence of instability. (Tr. 17.) In a letter to Dr. Faron dated August 27, 2014, neurosurgeon Peter Yoon, M.D., stated that he had seen Brown for her complaints of recurrent lower back pain without any significant radiation. (Tr. 374.) Dr. Yoon stated that Brown's neurological examination was normal, and that she would be a surgical candidate only if she demonstrated evidence of instability. *Id.* The ALJ noted that imaging shows only mild foraminal stenosis and no significant central canal narrowing. (Tr. 17, 362.) In addition, the ALJ stated that Brown's physicians have prescribed pain medication but have not documented any clinical findings supporting the severe pain alleged. (Tr. 17.) The ALJ further noted that Brown's physicians do not recommend aggressive treatment, but instead referred her to physical therapy. *Id.* The ALJ did not err in finding Brown's

conservative treatment was inconsistent with her complaints of disabling pain. *See Gowell v. Apfel,* 242 F.3d 793, 796 (8th Cir. 2001) (finding that a pattern of conservative medical treatment is a proper factor for an ALJ to consider in evaluating a claimant's credibility).

The ALJ next stated that the record did not contain any treatment notes pertaining to treatment after December of 2014, "so there is no objective evidence establishing a change in her condition. However, the claimant now alleges more significant limitations in her ability to lift, stand and walk." (Tr. 17.) Brown argues that the ALJ erred in finding there was no evidence after December 2014 that Brown "continued to experience symptoms," as Dr. Faron noted painful range of motion in February 2015. (Doc. 12 at 12.) Although Dr. Faron did note painful range of motion in February 2015 as he had on past visits, he also found no tenderness, a normal neurologic examination, and no other abnormalities. (Tr. 392-93.) The ALJ did not suggest that Brown had no limitations after December 2014. Rather, the ALJ stated that there was no medical evidence showing that her condition worsened from the time she filed her application to the time of the hearing to support her testimony of increased limitations. The record, including the February 2015 examination of Dr. Faron, supports this statement.

An ALJ may consider the lack of objective medical evidence supporting a plaintiff's subjective complaints as one factor in assessing credibility. *Forte v. Barnhart,* 377 F.3d 892, 895 (8th Cir. 2004). Although the medical evidence in the record supports Brown's complaints of back pain, the medical evidence as a whole belies Brown's allegations to the extent she claims disabling limitations.

Brown finally claims that the ALJ did not adequately discuss her strong work history. While the record supports a conclusion that Brown had a good work history, the fact that the ALJ did not specifically mention that history in making her credibility determination is not fatal to the

decision. An ALJ may still discount a claimant's credibility despite a good work history. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *see also Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008); *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) (explaining that an ALJ is not required to discuss each *Polaski* factor); *Samons v. Astrue*, 497 F.3d 813, 820 (8th Cir. 2007) (same). Any failure to more thoroughly discuss Brown's work history amounts to, at most, an "arguable deficiency in opinion-writing technique," that would not require this Court to reverse the ALJ's decision in this matter. *Hepp*, 511 F.3d at 806.

In summary, the ALJ gave good reasons for discounting Brown's subjective complaints. Thus, the ALJ's decision in this regard will not be disturbed. *See Julin*, 826 F.3d at 1086 (noting the deference due to an ALJ's credibility determination); *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

### 2. Opinion Evidence and RFC

Brown contends that the ALJ erred in discounting the opinion of treating physician Dr. Faron.

Dr. Faron completed a Medical Source Statement-Physical on June 10, 2015.[2] (Tr. 430-32.) He indicated that Brown's diagnosis was lower back pain, with clinical findings of "debilitating pain with activities." (Tr. 430.) Brown's treatment was described as "frequent office visits for narcotic refills." *Id.* Dr. Faron expressed the opinion that Brown was capable of lifting less than ten pounds frequently; can sit for fifteen minutes at a time and can sit a total of less than two hours; can stand for thirty minutes at a time, and can stand for a total of less than two hours; and requires multiple unscheduled fifteen-minute-long breaks due to pain. (Tr. 431-32.)

---

[2] Dr. Faron also completed a form regarding Brown's mental limitations. The ALJ found that Brown's mental impairment was not severe and resulted in no limitations. Because Brown does not challenge the ALJ's findings regarding her mental impairment, the undersigned will not discuss this evidence.

He found the following postural limitations: can never crawl; can rarely twist; can occasionally stoop, balance, crouch, and climb; and can constantly twist. (Tr. 431.) Dr. Faron also indicated that Brown would be off task due to her symptoms twenty-five percent of a typical eight-hour workday; is incapable of even "low stress" work; would have "good days" and "bad days," and would miss work due to her condition more than four days per month. (Tr. 432.)

The ALJ assigned "no weight' to Dr. Faron's opinions, finding that they were inconsistent with the evidence of record. (Tr. 17.) The ALJ explained that the objective imaging showed only mild degenerative disc disease, without significant worsening over a two-year period. *Id.* She stated that Brown has no evidence of radiographic instability, and no evidence of radiation or neurological abnormalities. *Id.* The ALJ further found that Dr. Faron's opinion regarding the severity of Brown's limitations was inconsistent with Brown's reported daily functioning. *Id.*

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the

weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

The ALJ provided sufficient reasons for discrediting Dr. Faron's opinion. First, Dr. Faron's opinion was not supported by the medical evidence of record. Lumbar imaging from 2012 revealed degenerative changes in the lower lumbar spine at L4-L5, but with only mild foraminal stenosis and no significant central canal narrowing. (Tr. 16, 362.) A subsequent lumbar MRI revealed only mild degenerative disc disease, without significant worsening. (Tr. 16, 368.) Dr. Yoon found no abnormalities, neurological or otherwise, on physical examination. (Tr. 371-72.) In August 2014, Brown had normal range of motion of the lumbosacral spine and lower extremities, no tenderness to palpation, and was able to walk on her heels and toes. *Id.*

Dr. Faron's own treatment notes reveal few clinical findings. Dr. Faron, an internist, treated Brown for various complaints, including her complaints of back pain. (Tr. 266-362, 390-400.) He saw Brown on approximately fourteen occasions during the period of February 2012 through February 2015. *Id.* The only finding noted by Dr. Faron on physical examination of Brown's back was "range of motion painful." (Tr. 296, 306, 320, 332, 344, 357, 392, 397, 400.) Dr. Faron noted no tenderness or other abnormalities. *Id.* He prescribed Hydrocodone[3] for Brown's pain; referred her to physical therapy; and referred her to neurosurgeon Dr. Yoon.

---

[3] Hydrocodone is an opioid analgesic indicated for the relief of moderate to moderately severe pain. *See Physician's Desk Reference ("PDR")*, 605 (70th Ed. 2016).

*Id.* On August 15, 2014, Dr. Faron noted that Dr. Yoon recommended continued conservative treatment. (Tr. 394.) Although Brown consistently complained of back pain, Dr. Faron routinely noted that Brown was "managing with hydrocodone," or "stable." (Tr. 317, 330, 343, 357, 397, 400.) In Dr. Faron's most recent treatment notes, dated February 2, 2015, he stated that Brown's lower back pain was continuing but "stable," and indicated that his plan was to continue Brown's pain medication. (Tr. 393.) Dr. Faron's treatment notes do not support the severe limitations articulated in the June 2015 Medical Source Statement-Physical. The form itself provides little explanation for the findings. Notably, when asked to identify the "clinical findings & objective signs," Dr. Brown stated only: "debilitating pain with activities." (Tr. 430.) As such, Dr. Faron appeared to rely significantly on Brown's subjective complaints of pain in determining the limitations set forth in the form.

In discrediting Dr. Faron's opinions, the ALJ also found that the limitations were inconsistent with Brown's reports of her daily functioning. (Tr. 17.) As previously discussed, Brown is capable of driving a vehicle and a motorcycle, shopping once a week, and attending social events. *Id.* The ALJ stated that, although Brown is more limited on bad days, she remains capable of completing light housework and preparing meals. *Id.* An ALJ can give less weight to a medical opinion when it is inconsistent with the evidence in the record. *See Travis v. Astrue,* 477 F.3d 1037, 1041 (8th Cir. 2007). The inconsistencies between Brown's reported activities and Dr. Faron's opinion was a sufficient basis for discrediting Dr. Faron's findings. *See Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014) (stating "if a doctor evaluates a patient as having more physical limitations than the patient actually exhibits in her daily living, an ALJ need not ignore the inconsistency") (citations omitted).

The ALJ concluded that Brown had the RFC to lift or carry twenty pounds occasionally, lift or carry ten pounds frequently; sit for six hours in an eight-hour workday; stand or walk for six hours in an eight-hour workday; and twist, climb, balance, stoop, crawl, crouch, and kneel for up to one third of the day. (Tr. 18.) Brown argues that the ALJ's RFC determination lacks the support of substantial evidence because the ALJ improperly rejected Dr. Faron's opinion, which was the only opinion regarding Brown's limitations.

Residual functional capacity means that which a person remains able to do despite her limitations. 20 C.F.R. § 404.1545(a), *Lauer v. Apfel,* 245 F.3d 700, 703 (8th Cir. 2001). The ALJ must assess a claimant's RFC based upon all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. 20 C.F.R. § 404.1545(a); *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995); *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005). A claimant's RFC is a medical question, and there must be some medical evidence, along with other relevant, credible evidence in the record, to support the ALJ's RFC determination. *Id.; Hutsell v. Massanari,* 259 F.3d 707, 711-12 (8th Cir. 2001); *Lauer,* 245 F.3d at 703-04; *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. *Hutsell,* 259 F.3d at 712. However, although an ALJ must determine the claimant's RFC based upon all relevant evidence, the ALJ is not required to produce evidence and affirmatively prove that a claimant is able to perform certain functions. *Pearsall,* 274 F.3d at 1217 (8th Cir. 2001); *McKinney,* 228 F.3d at 863. The claimant bears the burden of establishing her RFC. *Goff,* 421 F.3d at 790.

The Eighth Circuit has considered whether the "some medical evidence" that is required to support an RFC finding must include a medical opinion that specifically addresses the claimant's

work-related limitations. *See Flynn v. Astrue*, 513 F.3d 788, 793 (8th Cir. 2008) (rejecting argument that ALJ improperly concluded "on her own" that the claimant could lift 20 pounds occasionally and 10 pounds frequently because the record did not include supporting medical opinion; instead finding physicians' observations that claimant had normal muscle strength and mobility constituted "substantial medical evidence" supporting the RFC finding). Although an RFC must be based upon "some medical evidence," there is no requirement that the RFC align with, or be based upon, a specific medical opinion of record. *See Martise*, 641 F.3d at 927 (observing that ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians); *Halverson v. Astrue*, 600 F.3d 922, 933-34 (8th Cir. 2010) (holding that medical opinion evidence was not necessary to support the RFC where the ALJ considered the medical records, the claimant's statements, and other evidence in making the RFC determination); *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (even though RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner). The ALJ is required to rely upon medical evidence, but not medical opinion evidence. *See Martise*, 641 F.3d at 927.

The ALJ in this case properly relied on "some medical evidence" to support her RFC finding. The ALJ considered the record evidence as a whole, including the limited findings on examination of Dr. Faron discussed above. The ALJ also discussed the results of imaging, and the normal examination of Dr. Yoon, including full strength, full range of motion, and a normal gait. The ALJ also considered Brown's statements that she was capable of lifting thirty pounds, and continued to ride her motorcycle, albeit for short distances. Contrary to Brown's argument, the ALJ was not required to rely on the opinion of any one physician. In limiting Brown to a restricted range of light work, the ALJ adequately accounted for the supportable degree of

limitation due to Brown's back pain. Thus, the ALJ's RFC determination is supported by substantial evidence in the record as a whole.

After determining Brown's RFC, the ALJ found that she was capable of performing past relevant work as a security guard and assistant collections supervisor, and was not, therefore disabled. (Tr. 18.) She found in the alternative, with the assistance of a vocational expert, that Brown could perform other jobs existing in significant numbers in the national economy. *Id.* Brown does not challenge the ALJ's step five findings.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of September, 2017.